[206 N.C. App. 530 (2010)]

IN THE MATTER OF: K.J.L.

No. COA08-284-3

(Filed 17 August 2010)

**1. Termination of Parental Rights— grounds—neglect**

The trial court did not err by concluding that grounds existed to terminate respondent mother's parental rights under N.C.G.S. § 7B-1111(a)(1) based on neglect and the probability of repetition of neglect. Respondent failed to abide by the dispositional order, failed to maintain a stable residence, failed to follow through with program services including parenting classes, and failed to maintain gainful employment.

**2. Constitutional Law— effective assistance of counsel—failure to demonstrate prejudice**

Respondent mother did not receive ineffective assistance of counsel and her guardian *ad litem* did not breach his duty to protect her interests in a termination of parental rights case. Respondent failed to demonstrate any prejudice from her alleged deficient representation in light of the overwhelming evidence of grounds to terminate her parental rights.

Appeal by respondent mother from an order entered on or about 15 January 2008 by Judge Mary F. Covington in District Court, Davidson County. Heard in the Court of Appeals 23 July 2008. An opinion was filed 19 August 2008. *See In re K.J.L.*, 192 N.C. App. 272, 665 S.E.2d 504 (2008). A petition for rehearing was allowed on 30 September 2008 and amended to allow for additional briefs on 1 October 2008. By opinion filed on 16 December 2008, a divided panel of this Court vacated the order terminating respondent's parental rights, replacing the opinion filed on 19 August 2008. *See In re K.J.L.*, 194 N.C. App. 386, 670 S.E.2d 269 (2008). The North Carolina Supreme Court, by opinion filed 18 June 2009, reversed this Court and remanded for "consideration of the parties' remaining assignments of error." *See In re K.J.L.*, 363 N.C. 343, 677 S.E.2d 835 (2009).

*Charles E. Frye, III, for petitioner-appellee Davidson County Department of Social Services; Laura B. Beck, for appellee Guardian ad Litem.*

*Robert W. Ewing, for respondent-appellant.*

**IN RE K.J.L.**

[206 N.C. App. 530 (2010)]

STROUD, Judge.

This Court in *In re K.J.L.*, 194 N.C. App. 386, 389-91, 670 S.E.2d 269, 271-72 (2008) vacated the order terminating respondent's parental rights on two separate grounds: (1) the trial court did not initially have subject matter jurisdiction to issue the adjudication order, as the summonses to the parents were not properly "issued[,]" and "the adjudication order was essential to the trial court's subject matter jurisdiction" in the termination proceeding; and (2) the trial court also lacked subject matter jurisdiction over the termination of parental rights proceeding because "no summons was issued to the juvenile and no summons was served upon or accepted by the guardian ad litem for the juvenile." Our North Carolina Supreme Court, in *In re K.J.L.*, 363 N.C. 343, 348, 677 S.E.2d 835, 838 (2009), reversed the majority decision of this Court, on the basis of Judge Robert C. Hunter's dissenting opinion, and held that

> [b]ecause the purpose of the summons is to obtain jurisdiction over the parties to an action and not over the subject matter, summons-related defects implicate personal jurisdiction. Any deficiencies in the issuance and service of the summonses in the neglect and [termination of parental rights] proceedings at issue in this case did not affect the trial court's subject matter jurisdiction, and any defenses implicating personal jurisdiction were waived by the parties.

This case comes before this Court on remand for the purpose of deciding the remaining issues not addressed by the majority opinion in *In re K.J.L.*, 194 N.C. App. 386, 670 S.E.2d 269 (2008). Respondent argues that (1) the trial court erred in concluding that grounds existed to terminate her parental rights; (2) she received ineffective assistance of counsel; and (3) that her guardian ad litem breached his duty to protect her legal interests. We will present below pertinent facts to provide context for these remaining substantive issues.

I. Background[1]

On 28 March 2006, the Davidson County Department of Social Services ("DSS") filed a petition alleging that K.J.L. was a neglected and dependent juvenile. DSS stated that it had provided case management services to respondent since September 2005 "in an effort to

---

1. The substance of the factual background and analysis is taken from Judge Robert C. Hunter's dissenting opinion *In re K.J.L.*, 194 N.C. App. 386, 670 S.E.2d 269 (2008) (Hunter, Robert C., J., dissenting).

alleviate chronic neglect." According to DSS, respondent was found to be in need of services due to her inability to parent K.J.L., as well as her inability to protect the child. DSS alleged that respondent had "significant mental health issues" and cited a 8 March 2006 psychological evaluation which diagnosed respondent as suffering from "Anxiety Disorder, Depression, and Other Personality Disorder with Immature and Passive Dependent Features." DSS further alleged that respondent suffered from "diabetes mellitus, type 1[,]" and "[a]s a result of mismanagement of her disease, there are concerns that she cannot take proper care of herself, much less her child."

DSS claimed that respondent had received counseling services but shown no improvement in her parenting skills. DSS further claimed that respondent had "received instruction from various professionals since [K.J.L.'s] birth regarding techniques for the care of her child; however, she has displayed significant difficulty in retaining such information and putting it into practice with the child." DSS asserted that respondent's inability to develop and retain parenting skills had impacted K.J.L.'s development.

DSS further stated in the petition that respondent and K.J.L. had resided in a homeless shelter since September 2005. DSS claimed that shelter staff had "voiced numerous concerns about [respondent's] ability to live on her own and have advised against her moving into independent housing." The staff expressed concerns about respondent's "lack of parenting capacity" and believed allowing her to leave the shelter would place K.J.L. at risk of harm. DSS alleged that the shelter staff had "often 'overlooked' the [respondent's] problematic behaviors because of their concern that, on her own, she could not appropriately parent her child."

DSS further alleged that respondent had no income for the three months prior to the petition filing and had been deemed "'unemployable,' due to her limited commitment to securing and maintaining employment." Additionally, DSS noted respondent's relationship with K.J.L.'s father, a registered sex offender and alcoholic. DSS stated that homeless shelter staff had smelled alcohol on his breath on occasion when he was transporting respondent, and respondent had maintained a relationship with the father despite DSS's concerns about K.J.L.'s safety when in his presence. On 3 April 2006, DSS obtained custody of K.J.L. by non-secure custody order.

On 8 September 2006, K.J.L. was adjudicated neglected based on stipulations made by respondent and the father. The court continued

custody of K.J.L. with DSS. The court ordered that the permanent plan for the child be reunification, but further ordered that if "significant progress is not made by . . . respondent in the next six (6) months, an alternative option sh[ould] be considered." To address respondent's issues, the court ordered that respondent: (1) attend individual counseling with Daymark Recovery Services; (2) maintain a suitable residence; (3) maintain gainful employment; and (4) follow any and all recommendations of her physician, and sign a release so that DSS could monitor her medical conditions.

A permanency planning review hearing was held on 8 January 2007. The trial court found that respondent: (1) had been padlocked out of her apartment for nonpayment of rent; (2) had lost her job at National Wholesale and had not worked since; (3) had not exhibited that she could take proper care of herself; and (4) continued to exhibit her lack of parenting skills, noting that respondent attempted to feed K.J.L. inappropriate foods, had to be prompted to tend to K.J.L. during visitation, and was easily distracted. Accordingly, the court authorized DSS to cease reunification efforts with respondent and changed the plan for the child to termination of parental rights and adoption.

On 12 April 2007, DSS filed a petition to terminate respondent's parental rights. DSS alleged that respondent had neglected K.J.L. within the meaning of N.C. Gen. Stat. § 7B-101(15), and that it was probable that there would be a repetition of neglect if the child was returned to respondent's care. Additionally, DSS alleged that K.J.L. had been placed in the custody of DSS and that respondent, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so, pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).

The trial court held the hearing on the petition to terminate respondent's parental rights on 6 and 13 December 2007. By order entered 15 January 2008, the trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (3) to terminate respondent's parental rights. The court further concluded that it was in the juvenile's best interests that respondent's parental rights be terminated. Respondent gave notice of appeal.

## II. Grounds For Termination

[1] Respondent argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to termi-

nate her parental rights. Respondent contends that the trial court failed to make sufficient findings of fact to support its conclusion that she neglected the juvenile. Specifically, respondent asserts that the trial court failed to make a finding that K.J.L. was neglected at the time of the termination hearing. We are not persuaded by respondent's argument.

N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D., D.M.D., S.J.D., J.M.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9, 10 (2001)).

A "neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2007). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citing *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984)). However, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *Ballard*, 311 N.C. at 713-14, 319 S.E.2d at 231.

In the instant case, K.J.L. was adjudicated a neglected juvenile on 8 September 2006. In the dispositional order, the trial court ordered respondent to take certain actions in order to be reunified with K.J.L. However, respondent failed to abide by the dispositional order. The trial court found in the termination order that since the dispositional hearing, respondent had "failed to take significant and meaningful action to comply with the prior Orders of the Court." The trial court

found that respondent had failed to maintain a stable residence. Of note, the trial court found that respondent was often in arrears on her rent, and since 31 August 2006, there had been seven summary eject- ment actions filed against respondent. Also, respondent had agreed to attend parenting classes. However, the trial court found that respondent had been terminated from the Community Links Program because she failed to "follow through" with the program's services. The court further found that respondent failed to attend or complete any other parenting classes. Respondent was also ordered to main- tain gainful employment. The trial court found that respondent failed to do so. Based on these findings, the court concluded that because of respondent's conduct, there likely would be a repetition of neglect should K.J.L. be returned to her care.

Respondent also challenges the validity of the court's findings regarding the adjudication of neglect due to the trial court's alleged lack of jurisdiction. However, as stated above, our Supreme Court ruled that the trial court had jurisdiction to adjudicate K.J.L. as a neglected juvenile. *See In re K.J.L.*, 363 N.C. 343, 677 S.E.2d 835 (2009). Otherwise, respondent does not argue that the trial court erred in making any of the findings of fact supporting its conclusion of neglect. Therefore, the findings of fact are deemed to be supported by sufficient evidence, and are binding on appeal. N.C.R. App. P. 28(b)(6); *see also In re P.M.*, 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assign- ments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). Accordingly, we conclude that the trial court's findings of fact were sufficient to support its conclu- sion that respondent had neglected the juvenile, and there was a probability of repetition of neglect should the child be returned to respondent's care.

Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to support the trial court's order, the remaining ground found by the trial court to support termination need not be reviewed by the Court. *Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34.

### III. Ineffectiveness of Counsel and Guardian Ad Litem

[2] Next, we address respondent's arguments that she received inef- fective assistance of counsel and that her guardian ad litem breached his duty to protect her legal interests. Respondent bases her argu- ments on the following statement made by counsel during closing arguments at the termination hearing:

Uh, this child was taken into custody, as I recall, it was basically because [respondent] had nowhere to live, and because there [were] concerns about her medical condition, seizures, and leaving the child unattended. The Court has heard this evidence. There still seems to be two major concerns, and—and while, uh, *I cannot argue that there's not statutory grounds that exist for termination,* uh, I would hope the Court would find that those are not sufficient to be in the best interests.

(Emphasis added.) Respondent asserts that counsel "capitulated to the petitioner's allegations" and deprived her of a right to have a trial on the merits. Respondent further asserts that her guardian ad litem failed to protect her interests when he did not object to counsel's stipulation. *See* N.C. Gen. Stat. § 7B-1101.1(e) (2007) (a guardian ad litem should "ensure that the parent's procedural due process requirements are met"). Again, we are not persuaded by respondent's arguments.

"Parents have a 'right to counsel in all proceedings dedicated to the termination of parental rights.' " *In re L.C., I.C., L.C.,* 181 N.C. App. 278, 282, 638 S.E.2d 638, 641 (quoting *In re Oghenekevebe,* 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996)), *disc. review denied,* 361 N.C. 354, 646 S.E.2d 114 (2007). "This statutory right includes the right to effective assistance of counsel." *In re Dj.L., D.L., & S.L.,* 184 N.C. App. 76, 84, 646 S.E.2d 134, 140 (2007) (citing *In re L.C., I.C., L.C.,* 181 N.C. App. at 282, 638 S.E.2d at 641; *In re Oghenekevebe,* 123 N.C. App. at 436, 473 S.E.2d at 396). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing." *In re J.A.A. & S.A.A.,* 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005) (citing *In re Oghenekevebe,* 123 N.C. App. at 436, 473 S.E.2d at 396).

In *In re Dj.L.,* this Court stated that:

This Court has previously determined that alleged deficiencies did not deprive the respondent of a fair hearing when the respondent's counsel 'vigorously and zealously represented' her, was familiar 'with her ability to aid in her own defense, as well as the idiosyncrasies of her personality,' and 'the record contain[ed] overwhelming evidence supporting termination[.]'

*In re Dj.L., D.L., S.L.,* 184 N.C. App. at 86, 646 S.E.2d at 141 (quoting In re *J.A.A. & S.A.A.,* 175 N.C. App. at 74, 623 S.E.2d at 50). As in *In*

IN RE R.N.

[206 N.C. App. 537 (2010)]

*re Dj.L* and *In re J.A.A.*, we conclude that "[c]ounsel's representation, while not perfect, was vigorous and zealous." *In re Dj.L., D.L., S.L.*, 184 N.C. App. at 86, 646 S.E.2d at 141. Counsel represented respondent at every stage of this case, beginning with the adjudicatory hearing. Counsel presented two witnesses at the hearing, including the respondent, and cross-examined each witness presented by petitioner. Regarding counsel's supposed "capitulation," it is clear from the record that the court did not consider counsel's statement an admission. Foremost, we conclude that respondent has failed to demonstrate any prejudice from her alleged deficient representation in light of the overwhelming evidence of the existence of grounds to terminate her parental rights. Thus, we would hold that respondent's ineffective assistance of counsel claim fails, as does her related claim concerning her guardian ad litem.

IV. Conclusion

For the foregoing reasons, we hold there were sufficient grounds to support termination of respondent's parental rights, and she was sufficiently represented by counsel and guardian ad litem. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges MCGEE and HUNTER, Robert C., concur.