IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-791

Filed: 4 June 2019

Davidson County, Nos. 15 JT 169-71, 16 JT 67

IN THE MATTER OF: A.R.C., K.M.W., C.W.S.W., A.S.W.

Appeal by respondent from orders entered 26 April 2018 by Judge Mary F. Paul in Davidson County District Court. Heard in the Court of Appeals 9 May 2019.

*Assistant Davidson County Attorney Sheri A. Woodyard for petitioner-appellee Davidson County Department of Social Services.*

*Anné C. Wright for respondent-appellant mother.*

*Stephen M. Schoeberle for guardian ad litem.*

INMAN, Judge.

Respondent-Mother ("Mother") appeals from orders terminating her parental rights with respect to each of her four children, A.R.C. ("Amy"), K.M.W. ("Kim"), C.W.S.W. ("Connor"), and A.S.W. ("Amber," collectively "the children"),[1] arguing that she was denied effective assistance of counsel because her trial counsel failed to advocate for her in the termination hearing. After careful review of the record and applicable law, we remand for the trial court to determine whether Mother is entitled to relief or whether termination is proper in the absence of a further hearing on the merits.

---

[1] Pseudonyms are used to protect the identities of the children and for ease of reading.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

In June 2015, Connor, who was just a few months old, was diagnosed with failure to thrive. Connor was hospitalized and immediately gained significant weight. On 11 August 2015, Mother entered into a case plan with the Davidson County Department of Social Services ("DSS"), which required her to obtain a mental health assessment, obtain stable housing and employment, ensure that the children were adequately fed, and keep a clean family home. Approximately three weeks later, a DSS social worker visited Mother's home and observed that Amy, Kim, and Connor and the home were not being taken care of as agreed. DSS asked Mother to place them in kinship care, to which she consented to having them live with a maternal aunt and the aunt's fiancé. While in kinship care, Kim required medical care, but her parents could not be located to give permission for her treatment.

On 14 October 2015, after DSS filed petitions alleging that Amy, Kim, and Connor were neglected and dependent juveniles, the trial court awarded nonsecure custody of them to DSS. On 21 March 2016, the trial court entered an order adjudicating the three children as neglected based on stipulated facts. The children remained in DSS custody but were placed with their maternal great-aunt.

In July 2016, Mother gave birth to Amber. A few days later, DSS filed a petition alleging that Amber was a neglected and dependent juvenile, noting that Mother had open DSS cases with her other three children and had not made suitable

progress on her case plan. DSS obtained nonsecure custody of Amber and placed her in foster care with her three siblings. The trial court entered an order adjudicating Amber as neglected on 14 September 2016.

On 20 February 2017, DSS filed petitions to terminate Mother's parental rights to the children on the grounds of neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the children's cost of care. Following a hearing on 30 November 2017, the trial court determined that Mother required a guardian *ad litem* pursuant to N.C. Gen. Stat. § 1A-1, Rule 17. The trial court found that Mother "lack[ed] sufficient capacity to manage her own affairs and to communicate important decisions due to mental illness and inebriety." Mother was later hospitalized to receive mental health treatment.

On 24 January 2018, nearly a year after DSS filed the petitions to terminate Mother's parental rights, her guardian *ad litem* accepted service of process of the petitions on her behalf. Mother's guardian *ad litem* and her attorney were notified of a hearing on the petitions scheduled for 29 March 2018.

On the morning of the hearing, Mother's attorney filed an answer denying many of DSS's allegations and a motion to dismiss the petitions. Mother did not personally attend the hearing, but her guardian *ad litem* and her court-appointed attorney were present on her behalf. The trial court did not inquire into Mother's absence. Throughout the hearing, Mother's attorney did not object to any evidence

presented by DSS, cross-examine DSS's witnesses, or present any evidence or arguments challenging termination.

On 26 April 2018, the trial court entered orders terminating Mother's parental rights based on neglect and failure to pay a reasonable portion of the children's cost of care. N.C. Gen. Stat. §§ 7B-1111(a)(1), (4) (2017). The trial court further concluded that termination was in the children's best interests. Mother filed timely notice of appeal.

## II. ANALYSIS

Mother's sole argument is that she received ineffective assistance of counsel because her attorney failed to advocate for her during the termination hearing. Because the record on appeal is insufficient for adequate appellate review, we conclude that further proceedings in the trial court are necessary to resolve this issue.

" 'When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures,' which in North Carolina has been achieved in part through statutory provisions that ensure a parent's right to counsel[.]" *In re K.N.*, 181 N.C. App. 736, 737, 640 S.E.2d 813, 814 (2007) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753-54, 71 L. Ed. 2d 599, 606 (1982)). The statutory right to counsel "includes the right to effective assistance of counsel." *In re Bishop*, 92 N.C. App. 662, 665, 375 S.E.2d 676, 678 (1989). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's

performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing." *In re J.A.A.*, 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005).

## A. Deficient Performance

Mother contends that her attorney was deficient because he failed to advocate on her behalf during the termination hearing. *See In re S.N.W.*, 204 N.C. App. 556, 560, 698 S.E.2d 76, 79 (2010) ("It is well established that attorneys have a responsibility to advocate on the behalf of their clients."). The transcript reflects that, as the termination hearing was about to begin, Mother's absence was acknowledged, but no reasons for the absence were discussed. On the morning of the hearing, Mother's attorney had filed answers to the termination petitions and moved for the trial court to consider them, which it did.

But once the hearing began, Mother's attorney ceased to advocate. While he remained present in the courtroom, Mother's attorney did not object during the testimony of DSS's witnesses, did not cross-examine those witnesses, and did not present any evidence.[2] At the conclusion of both the adjudication and dispositional phases of the hearing, Mother's attorney did not make any argument on her behalf.

---

[2] Mother's Rule 17 guardian *ad litem* was also given the opportunity to question witnesses and offer arguments on Mother's behalf, but declined to do so. This Court has held that "Rule 17 contemplates active participation of a GAL in the proceedings for which the GAL is appointed." *In re A.S.Y.*, 208 N.C. App. 530, 538, 703 S.E.2d 797, 802 (2010). However, because Mother does not present any issues regarding her guardian *ad litem*'s conduct on appeal, we will not address it further.

The transcript and the remainder of the record on appeal is insufficient for this Court to adjudicate Mother's ineffective assistance of counsel claim. As an appellate court, we can only know what is included in the record before us. *See State v. Lawson*, 310 N.C. 632, 641, 314 S.E.2d 493, 499 (1984) ("[T]his Court is bound on appeal by the record on appeal as certified and can judicially know only what appears in it."), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). The record here provides only limited evidence regarding Mother's relationship with her attorney, and neither the parties nor the trial court addressed the issue on the record with sufficient enough detail at the termination hearing.

Of particular concern here is the period between when Mother was appointed a substitutive guardian *ad litem* and the termination hearing. Mother attended the hearing that resulted in an order appointing a guardian *ad litem*; however, she did not attend the only permanency planning hearing conducted between that appointment and the termination hearing. The order entered in the permanency planning hearing indicated that Mother "was admitted to High Point Regional Hospital after November 30, 2017, due to her severe mental health needs, depression, and suicidal ideations." But neither the termination order nor any other trial court order addresses what happened to Mother between her hospital admission and the termination hearing.

On this record, we cannot determine why Mother did not attend the termination hearing, or what her condition was on the date of the hearing. Nor can we determine whether Mother had contact with her attorney or her guardian *ad litem* or what instructions she may have given them about her cases. Mother's attorney did indeed file answers denying the allegations in the petitions on the morning of the termination hearing, suggesting that the attorney had some reason to believe that she wanted to contest the termination and that the attorney believed there was a good faith basis to do so. Yet Mother's attorney did nothing to advocate for Mother once the termination hearing began. Nothing in the record explains this discrepancy.

Mother's attorney's general silence during the termination hearing is puzzling, but without knowing the reasons for this silence, we cannot determine whether this lack of advocacy constituted deficient representation. At best, we can only engage in speculation as to the reasons why counsel did not advocate for Mother. *Cf. State v. Taylor*, 79 N.C. App. 635, 637, 339 S.E.2d 859, 861 ("While we find the absence of positive advocacy at the sentencing hearing troublesome, we do not believe we can hold, on this record, that it constituted deficient performance prejudicial to the defendant."), *disc. review denied*, 317 N.C. 340, 346 S.E.2d 146 (1986).

Because additional facts regarding the reasons behind counsel's actions are needed to resolve Mother's claim that she was denied a fair hearing, the appropriate remedy is to remand to the trial court so that it may find those facts and make a

determination as to the adequacy of counsel's representation. *See In re S.N.W.*, 204 N.C. App. at 561, 698 S.E.2d at 79 ("[W]e remand for determination by the trial court regarding efforts by Respondent's counsel to contact and adequately represent Respondent at the termination of parental rights hearing and whether Respondent is entitled to appointment of counsel in a new termination of parental rights proceeding."); *cf. State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) ("Indeed, because of the nature of IAC claims, defendants likely will not be in a position to adequately develop many IAC claims on direct appeal."), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). On remand, the trial court should inquire into "efforts by [Mother's] counsel to contact and adequately represent [her] at the termination of parental rights hearing" and determine "whether [she] is entitled to appointment of counsel in a new termination of parental rights proceeding." *In re S.N.W.*, 204 N.C. App. at 561, 698 S.E.2d at 79; *see also In re D.E.G.*, 228 N.C. App. 381, 386-87, 747 S.E.2d 280, 284 (2013) ("[B]efore . . . relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court must inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected.").

## B. Prejudice

Both DSS and the children's guardian *ad litem* encourage us to hold that Mother's ineffective assistance claim must fail because, even if her counsel was deficient, she cannot show prejudice from her counsel's allegedly deficient conduct. If we were to follow this argument, then counsel's total lack of advocacy throughout the termination hearing would be immaterial as not even the most compelling advocate would have changed the outcome and stopped the trial court from terminating Mother's parental rights. This is not a conclusion we can reach from the sparse record before us. *See In re S.N.W.*, 204 N.C. App. at 561, 698 S.E.2d at 79 ("We are mindful that the record is replete with evidence which casts doubt on Respondent's ability to parent. Nonetheless, Respondent is entitled to procedures which provide him with fundamental fairness in this type of action."). We decline to speculate about what trial counsel "could have" argued or presented below or how it would have affected the outcome of the case without being privy to counsel's knowledge of the underlying facts. If a prejudice determination is necessary, it should be made by the trial court, after it is in full possession of all the facts surrounding counsel's and Mother's conduct and the facts of the case.

### III. **CONCLUSION**

This Court has made clear that certain "procedural safeguards . . . must be followed to ensure the fundamental fairness of termination proceedings." *Id.* (quotations omitted). Because the record before us is silent as to Mother's attorney's

justification for his actions during the termination hearing, the appropriate remedy is to remand to the trial court for a hearing to determine whether counsel's actions were deficient, and, if so, whether those deficiencies deprived Mother of a fair hearing. *See In re M.G.*, 239 N.C. App. 77, 83, 767 S.E.2d 436, 441 (2015) ("[T]his Court has consistently vacated or remanded [termination of parental rights] orders when questions of 'fundamental fairness' have arisen due to failures to follow basic procedural safeguards." (citation omitted)). Accordingly, this case is remanded to the trial court to determine whether Mother received ineffective assistance of counsel.

REMANDED.

Judges STROUD and ZACHARY concur.